# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**JOSEPH SAM**                                            **CIVIL ACTION**

**VERSUS**                                                **NO.  06-2963**

**STATE OF LOUISIANA**                                    **SECTION "I"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

the petitioner's motion for summary judgment (Rec. Doc. No. 15) be **DENIED** and the

instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for

failure to exhaust state court remedies.

I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Joseph Sam, is incarcerated in the C. Paul Phelps Correctional

Center in Pine Prairie, Louisiana.[2]  Sam and a co-defendant, Kraig V. Marks, were

charged by bill of information in Jefferson Parish on March 26, 2002, with distribution

of cocaine.[3]  The charge was later amended on April 17, 2003, to possession with intent

to distribute cocaine.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts

of the case in relevant part as follows:

> On March 7, 2002, between 10:15 and 10:30 a.m., Detective Robert
> Gerdes of the Jefferson Parish Sheriff's Office received information from a
> "confidential informant" that a wheelchair-bound double-amputee named "Kraig"
> was distributing cocaine from Room 101 at the Days Inn Motel at 3750 Westbank
> Expressway in Harvey.  Further, the informant told Detective Gerdes that a black
> man known as "Kid," who drives a white Lincoln Continental, would be
> delivering cocaine to Kraig at the motel between 11:15 and 11:45 a.m. that
> morning.  Detective Gerdes related this information to Sergeant Bruce Harrison
> of the Jefferson Parish Sheriff's Office.
> Sergeant Harrison testified that Detective Gerdes told him that a white
> male with long black hair named "Kraig," who was a "double amputee in his
> legs," was distributing cocaine from Room 101 at the Days Inn.  Sergeant

---

[2]Rec. Doc. No. 10.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 3/26/02.

[4]Id. (handwritten notation).

2

Harrison and three other officers established surveillance of the motel around 11:00 a.m. on March 7, 2002. Sergeant Harrison testified that he observed a white male, who was a double amputee, coming out of Room 101 in a wheelchair. The man was accompanied by a female and another white male. The three individuals moved clothing and other items from Room 101 to 103.

At approximately 11:30 a.m., the officers spotted a white Lincoln Continental entering the motel's parking lot. Sergeant Harrison pulled his vehicle in front of defendant's car and another JPSO officer blocked defendant's vehicle from the rear. Defendant placed his vehicle in reverse, but stopped when he realized another police vehicle had blocked his vehicle. Sergeant Harrison and the other officers ran to defendant's vehicle with their weapons drawn and verbally identified themselves as police.

Sergeant Harrison, with his badge displayed, tried to open defendant's vehicle's driver's side door, which was locked. When Sergeant Harrison ordered defendant to open the door, defendant reached for his right front pocket. Sergeant Harrison ordered defendant to stop reaching toward his pocket and unlock the vehicle's doors. Defendant complied with both orders and Sergeant Harrison removed defendant from the vehicle. Sergeant Harrison placed defendant face-down on the ground and patted defendant's right front pocket to check for weapons. As Sergeant Harrison patted defendant's pocket, he felt crack cocaine and placed defendant under arrest. Thereafter, he retrieved four plastic bags, two clear bags that contained a "chunky" white powder and two amber bags that contained large off-white "chunks" from defendant's right front pocket.

At trial, Charles Krone, who was accepted as an expert in forensic science, testified that the substances inside of the four bags seized from defendant tested positive for cocaine. The two clear bags contained 6.44 grams of cocaine hydrochloride. The two amber bags contained 5.53 grams of base cocaine, which is commonly referred to as crack cocaine.

Sergeant Harrison testified that he had been a police officer for twenty years, with eighteen of those years in narcotics enforcement. Sergeant Harrison, was accepted, without objection, as an expert in the field of use, packaging, distribution, and value of narcotics. According to Sergeant Harrison, the handling of crack cocaine was part of that expertise. Further, Sergeant Harrison testified that he had been qualified as a narcotics expert over one hundred times in Orleans Parish and in every section in the Twenty-Fourth Judicial District Court for Jefferson Parish.

At trial, Sergeant Harrison opined that defendant intended to distribute the cocaine that was in his possession because he had two different types of drugs in four individual packets that each weighed approximately the same amount. Further, the crack, which was broken into smaller pieces, appeared to be ready for

retail distribution.  According Lieutenant Harrison, twelve grams of cocaine, which is the amount that the defendant was holding, contains between 60 and 120 individual portions.  Lieutenant Harrison stated that, in his estimation, one person could not consume the amount of crack cocaine that defendant was holding in one or two days, much less both the powdered and crack cocaine.  Lieutenant Harrison also testified that the fact defendant was not carrying a pipe to smoke the crack or a straw to inhale the powder was inconsistent with possession for personal use.  Lieutenant Harrison acknowledged that defendant was not in possession of any money or weapons.

At trial, defendant testified that he was going to the motel to rent a room to use drugs, not to deliver them.  Defendant testified, at the suppression hearing, that, as soon as he pulled into the motel's parking lot, a van blocked him in the front and the police "bum rushed" his car.  He instinctively put the vehicle in reverse, which automatically locked the car's doors.

According to defendant, after he stopped, ten police officers ran up to the car, yelled at him, beat on the vehicle's glass with their guns, and shot "some to the window."  Defendant said that, initially, he was in shock but, when he realized what had happened, he unlocked the vehicle's doors.  Sergeant Harrison grabbed him and slammed him on the ground.  He said that the other officers began kicking him in his face and chin.  Defendant said that Sergeant Harrison went directly into his pocket and seized the crack cocaine.  Defendant admitted that he had several prior convictions.

According to defendant, who was accepted as an expert in the field of cocaine consumption habits by cocaine addicts, the amount of cocaine seized from him would not be inconsistent with personal use.  Defendant explained that, as in other retail markets, one obtains a better deal on drugs by buying in larger amounts.  Defendant said that normally a single rock costs $20.  When a user purchases an "eight ball," the user can "cut" ten rocks off of an "eight ball."  He admitted that he paid $100 for each of the "eight ball" bags, which, in his estimation, equated to approximately half price per rock.  Defendant did admit that even a drug user with a severe addiction would be unable to consume this amount of cocaine in two days.

State v. Sam, 905 So.2d 379, 381-383 (La. App. 5th Cir. 2005); State Record Volume 5

of 6, Louisiana Fifth Circuit Opinion, 05-KA-88, pp. 3-6, May 31, 2005.

Prior to trial, Sam's counsel filed a motion to suppress the evidence and statements, alleging that the arrest was illegal and the search warrant was issued without sufficient probable cause.[5]  Counsel made three arguments in support of the motion:[6] (1) Sergeant Harrison exceeded the permissible boundaries of "pat down for weapons" and acted without probable cause as required by <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).[7] (2) Sergeant Harrison did not have probable cause to arrest Sam because the arrest flowed from the illegal search and seizure of the cocaine from his pocket. (3) Harrison did not make a valid search incident to the arrest because the arrest resulted from the illegal search and seizure.  After two evidentiary hearings held on August 7, and December 5, 2002, the state trial court orally denied the motion to suppress in open court on April 10, 2003.[8]

---

[5]St. Rec. Vol. 1 of 6, Motion to Suppress, undated.

[6]St. Rec. Vol. 1 of 6, Memorandum in Support of Motion to Suppress, 2/12/03.

[7]In <u>Terry</u>, the United States Supreme Court held that an officer may stop an individual when he suspects that the person is committing, has committed, or is about to commit a crime to determine the person's identity and an explanation for his actions.

[8]St. Rec. Vol. 1 of 6, Minutes of Motion to Suppress Hearing, 8/7/02; Minutes of Motion to Suppress Hearing, 12/5/02; Minutes on Ruling on Motion to Suppress, 4/10/03; St. Rec. Vol. 2 of 6, Transcript of Hearing on Motion to Suppress, 8/7/02; Transcript of Hearing on Motion to Suppress, 12/5/02; St. Rec. Vol. 4 of 6, Transcript of Ruling on Motion to Suppress, 4/10/03.

Sam's counsel filed a writ application in the Louisiana Fifth Circuit Court of Appeal, which was denied, stating, "Relator has an adequate remedy on appeal, if necessary."[9]

Thereafter, Sam filed a pro se writ application in the Louisiana Supreme raising only two grounds for relief:[10] (1) The information received from the confidential informant was not sufficient to establish probable cause or reasonable suspicion for an investigatory stop and detention. (2) The search and seizure of items from his pocket violated the Fourth and Fourteenth Amendments and Terry v. Ohio. The Louisiana Supreme Court denied the writ application without reasons.[11]

On March 17, 2004, Sam's co-defendant, Kraig V. Marks, entered a plea of guilty to possession with intent to distribute cocaine and received a five-year sentence.[12]

---

[9]St. Rec. Vol. 1 of 5, 5th Cir. Order, 03-KH-726, 7/9/03.

[10]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 03-KH-2085, 7/25/03; La. S. Ct. Letter, 2003-KH-2085, 7/25/03 (post mark 7/21/03).

[11]State v. Sam, 852 So.2d 1026 (La. 2003); St. Rec. Vol. 1 of 6, La. S. Ct. Order, 2003-KH-2085, 9/5/03.

[12]St. Rec. Vol. 1 of 6, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 3/17/04; Minutes of Plea (Marks), 3/17/04.

Sam was tried before the state trial judge on April 28, 2004, and found guilty as charged.[13]   On May 6, 2004, the state trial court sentenced Sam to 15 years at hard labor.[14]   The State also filed a multiple offender bill, to which Sam entered a plea of not guilty.[15]

After hearings held on August 19, and September 23, 2004, the state trial court found Sam to be a third offender.[16]   The court vacated the original sentence and sentenced Sam to serve 25 years in prison without benefit of parole, probation or suspension of sentence and without good-time eligibility.

On appeal to the Louisiana Fifth Circuit, Sam's counsel raised two grounds for relief:[17] (1) The trial court erred in denying the motion to suppress because Sergeant Harrison's testimony was inconsistent and not worthy of credit, and the seizure of cocaine from Sam's pocket violated the "plain feel" exception because Sergeant Harrison had to squeeze the bag to identify the contraband. (2) The trial court erred in restricting

---

[13]St. Rec. Vol. 1of 6, Trial Minutes, 4/28/04; St. Rec. Vol. 3 of 6, Trial Transcript, 4/28/04.

[14]St. Rec. Vol. 1 of 6, Sentencing Minutes, 5/6/04.

[15]St. Rec. Vol. 1 of 6, Sentencing Minutes, 5/6/04; Multiple Bill (2 pages), 5/5/04.

[16]St. Rec. Vol. 1 of 6, Minutes of Multiple Bill Hearing, 9/23/04; St. Rec. Vol. 3 of 6, Transcript of Multiple Bill Hearing, 8/19/04; Transcript of Multiple Bill Hearing, 9/23/04.

[17]St. Rec. Vol. 3 of 6, Appeal Brief, 05-KA-88, 2/22/05; State v. Sam, 905 So.2d at 383, 386; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 05-KA-88, 5/31/05.

Sam's good-time eligibility.  The court affirmed the conviction, finding no merit in Sam's claims, but amended Sam's sentence to remove the good-time eligibility restriction.[18]  Counsel's application for rehearing was refused on July 8, 2005.[19]

Sam's counsel filed a timely[20] writ application on August 9, 2005, with the Louisiana Supreme Court seeking review of three claims:[21]  (1) The appellate court erred in considering evidence from the trial when evaluating the denial of the motion to suppress evidence seized without a warrant. (2) The appellate court erred in finding no inconsistencies in Sergeant Harrison's testimony. (3) The appellate court erred in affirming the denial of the motion to suppress because the pat-down search had exceeded

---

[18]State v. Sam, 905 So.2d at 386, 387; St. Rec. Vol. 5 of 6, 5th Cir. Opinion, 05-KA-88, 5/31/05. The appellate court also directed the state trial court to correct the commitment order and minute entry to reflect that the correct charge for which he was convicted was possession with intent to distribute.

[19]St. Rec. Vol. 3 of 6, Application for Rehearing, 05-KA-88, 6/14/05; 5th Cir. Order, 05-KA-88, 7/8/05.

[20]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the denial of the application for rehearing to file a writ application in, or mail one to, the Louisiana Supreme Court.  Counsel's subsequent writ application had a postmark of August 8, 2005, which was thirty days after the refusal of the rehearing.  See St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2005-K-2100, 8/10/00 (indicating file date of 8/9/05 and postmark of 8/8/05); St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 05-K-2100, 8/9/05 (postmarked 8/8/05); Causey v. Cain, 450 F.3d 601 (5th Cir. 2006).

[21]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 05-K-2100, 8/9/05 (post marked 8/8/05).

the scope allowed in <u>Terry v. Ohio</u>.  The Louisiana Supreme Court denied the application without reasons on March 10, 2006.[22]

Sam's conviction became final 90 days later, on June 8, 2006, when he did not file a writ application with the United States Supreme Court.  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

II.   FEDERAL HABEAS PETITION

On June 23, 2006, Sam filed a petition for federal habeas corpus relief seeking relief on the following grounds:[23]  (1) His arrest was unlawful because the confidential informant was not reliable to establish probable cause or reasonable suspicion.  (2) He was subjected to an unconstitutional search and seizure.  (3) The state trial court erred in denying the motion to suppress based on the contradictory testimony of Sergeant Harrison.  (4) The state trial court should have suppressed Sergeant Harrison's search and seizure for lack of a justified reason. (5) The seizure and search by Sergeant Harrison were outside of the scope of a <u>Terry</u> frisk because the officer did not believe that the

---

[22]<u>State v. Sam</u>, 925 So.2d 510 (La. 2006); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2005-K-2100, 3/10/06.

[23]Rec. Doc. No. 3, 9.

object in Sam's front pocket was a weapon.  (6) Sergeant Harrison used a <u>Terry</u> frisk to search for evidence by continuing to search after he concluded that Sam was unarmed. (7) Sam was denied due process on review of the search and seizure claims.  (8) The Louisiana Fifth Circuit erred in considering trial evidence when ruling on the denial of the motion to suppress evidence seized without a warrant.  (9) Sergeant Harrison's physical manipulation of Sam's front pocket with his fingers violated the Fourth Amendment prohibition against unreasonable searches.  (10) The information received from the confidential informant did not provide sufficient facts and circumstances to justify the stop, search and seizure.

The State filed a response in opposition to Sam's petition, alleging that the petition was not timely filed.[24]  Alternatively, the State argues that at least two of Sam's claims have not been exhausted in the state courts.  The State also suggests that Sam's petition may be a prohibited second or successive petition because he filed a prior federal habeas petition pursuant to 28 U.S.C. § 2241, which was dismissed without prejudice for failure to exhaust state court remedies.

In reply to the State's opposition response, Sam filed a motion seeking a summary judgment finding that his claims establish that he was denied due process and equal

---

[24]Rec. Doc. No. 14.

protection of the law in his criminal proceedings.[25]   Sam also filed objections to the

State's opposition response in which he challenges the State's assertions and reiterates

the arguments in support of his claims.[26]

III.     SECOND OR SUCCESSIVE FEDERAL PETITION

As suggested by the State, the records of this court reflect that Sam filed an earlier

habeas petition pursuant to 28 U.S.C. § 2241 in this court on November 4, 2003.[27]   In that

petition, he urged pretrial challenges alleging unlawful stop, search and seizure,

malicious prosecution and denial of a speedy trial.

On February 12, 2004, I issued a report and recommendation to the district judge,

recommending that Sam's petition be dismissed without prejudice for failure to exhaust

state court remedies.[28]   The district judge issued an order and a judgment on March 19,

2004, dismissing Sam's habeas petition as recommended.[29]   The United States Fifth

---

[25]Rec. Doc. No. 15.

[26]Rec. Doc. No. 21, 22, 23.

[27]Joseph K. Sam v. State of Louisiana, Civ. Action No. 03-3122"I"(2) (E.D. La.).

[28]Civ. Action No. 03-3122"I"(2), Rec. Doc. No. 16.

[29]Civ. Action No. 03-3122"I"(2), Rec. Doc. Nos. 27, 28.

Circuit Court of Appeals denied issuance of a certificate of appealability on October 19, 2004.[30]

Sam filed the instant petition for habeas relief pursuant to 28 U.S.C. § 2254 after his direct appeal was resolved.  Before considering the current petition, the court is compelled to consider the State's argument that the current claims in the instant case are presented in a second or successive petition, which would require certification of the claims by the circuit court prior to consideration in this court.  28 U.S.C. § 2244(b)(3).

28 U.S.C. §§ 2244(b)(1) and (2) provide for the dismissal of any new or previously raised claim presented in a second or successive Section 2254 habeas corpus petition.  Like other circuits, the United States Fifth Circuit Court of Appeals has recognized that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, did not define the phrase "second or successive" found in 28 U.S.C. § 2244.  For guidance, the United States Fifth Circuit has turned to pre-AEDPA law defining those same terms under Rule 9(b) of the Rules Governing § 2254 Cases:

> Section 2244(b) does not define "second or successive" petition.  The specific language in the Act is derived from Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, which states that "[a] second or successive petition may be dismissed if . . . it fails to allege a new or different grounds for relief and

---

[30]Civ. Action No. 03-3122"I"(2), Rec. Doc. No. 33.

the prior determination was on the merits or, if new and different grounds are alleged, . . . the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." Although the AEDPA's amendment to § 2244 imposes stricter requirements for "second or successive" petitions than the pre-AEDPA "abuse of the writ" standard in Rule 9(b), <u>nothing in the AEDPA affects the determination of what constitutes a "second or successive" petition.</u>

<u>In re Gasery</u>, 116 F.3d 1051 (5th Cir. 1997) (emphasis added) (citation omitted).

The Fifth Circuit has consistently held that an adjudication on the merits is necessary before a subsequent petition is considered "second or successive." <u>See</u> <u>Barrientes v. Johnson</u>, 221 F.3d 741 (5th Cir. 2000)(when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000)(subsequent filing not successive when prior filing was dismissed without prejudice)), <u>cert. dism.</u>, 121 S.Ct. 902 (2001); <u>Graham v. Johnson</u>, 168 F.3d 762 (5th Cir. 1999) ("Under current law, however, it is clear that an application <u>filed</u> <u>after</u> <u>a</u> <u>previous application</u> <u>was</u> <u>fully</u> <u>adjudicated</u> <u>on</u> <u>the</u> <u>merits</u> is a second or successive application within the meaning of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis added)), <u>cert. denied</u>, 529 U.S. 1097 (2000). However, the Fifth Circuit has made clear that under AEDPA, "a prisoner's application is not second or successive simply because it follows an earlier federal petition." <u>In re Cain</u>, 137 F.3d 234, 235 (5th Cir. 1998).

Sam's petition is not a prohibited second or successive petition for several reasons. First, his prior habeas petition was brought pursuant to Section 2241, the general habeas statute applicable to such pretrial challenges.  The gate-keeping provision of Section 2244(b) specifically references petitions under Section 2254.  As such, the federal courts have recognized that the prohibition against second or successive petitions does not apply to habeas petitions brought under other provisions, specifically Section 2241.  Felker v. Turpin, 518 U.S. 651, 662-663 (1996); Barapind v. Reno, 225 F.3d 1100, 1111 (9th Cir. 2000).

Furthermore, Sam's first petition under Section 2241, was dismissed without prejudice for failure to exhaust state court remedies.  There was no consideration of the merits of the claims raised in that petition.  Thus, Sam's petition is not a prohibited second or successive petition.  See Barrientes, 221 F.3d at 741.

IV.    GENERAL STANDARDS OF REVIEW

AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[31] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998)

---

[31]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

(citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Sam's petition, which, for reasons discussed below, is deemed filed in a federal court on May 30, 2006.[32]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Sam's petition is not timely filed and that he has failed to exhaust state court remedies as to at least two claims raised in his federal petition.  I find, however, that Sam's petition is timely filed.  Contrary to the State's arguments, Sam's 2005 writ application to the Louisiana Supreme Court was timely postmarked within 30

---

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995).  Sam's petition was filed by the clerk of court on June 23, 2006, when the filing fee was paid.  Sam did not date his signature on the petition or the memorandum in support.  He did, however, date his signature on the pauper application submitted therewith on March 29, 2006.  I will consider this to be the earliest date he could have submitted it to prison officials for mailing.  The record does not demonstrate any other appropriate date and Sam has not suggested any.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  <u>See</u> <u>Cousin v. Lensing</u>, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

days of the refusal of the application for rehearing by the Louisiana Fifth Circuit.[33]  The State's limitations defense must be rejected.

The record, however, does reflect that Sam has <u>not</u> exhausted available state court proceedings and his petition must be dismissed without prejudice for that reason.

V.    <u>EXHAUSTION OF STATE COURT REMEDIES</u>

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief."  <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>accord</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>Nobles</u>, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to <u>all</u> of the federal court claims."  <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court."  <u>Id</u>. (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

---

[33]As noted previously, the writ application filed by counsel was postmarked on August 8, 2005, which was 30 days after the refusal of rehearing on July 8, 2005.  <u>See</u> St. Rec. Vol. 1 of 6, La. S. Ct. Letter, 2005-K-2100, 8/10/00 (indicating file date of 8/9/05 and postmark of 8/8/05); St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 05-K-2100, 8/9/05 (postmarked 8/8/05); St. Rec. Vol. 3 of 6, 5th Cir. Order, 05-KA-88, 7/8/05.  This was a timely submission under La. S. Ct. R. X§5.  <u>Causey v. Cain</u>, 450 F.3d 601 (5th Cir. 2006).

round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420).  It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court.  Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Sam must fairly present the same claims and legal theories he urges in this federal court to the Louisiana Supreme Court. The State argues that Sam has failed to seek proper review in the Louisiana Supreme Court of four of the claims raised in this court.

Review of Sam's post-conviction writ application to the Louisiana Supreme Court demonstrates that Sam has presented to that court his claims numbered three, four, five,

17

six, eight and nine for review.  However, the record reflects that Sam has <u>not</u> presented his seventh claim, denial of due process on review of the search and seizure claims, to any state court.  In addition, his first, second and third claims, unlawful arrest, unconstitutional search and seizure and unreliable confidential informant, have not been fairly presented to the Louisiana Supreme Court.

As noted by the State and Sam, the latter three claims were presented by Sam in his pro se, pretrial writ application to the Louisiana Supreme Court.  This writ application followed that filed by his counsel in the Louisiana Fifth Circuit.  The appellate court denied counsel's writ application, noting that relief would be available on direct appeal.  The Louisiana Supreme Court thereafter denied Sam's writ application without reasons.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).  Under this reasoning, the last reasoned decision on the issue was that of the Louisiana Fifth Circuit, which left review of Sam's claims for the direct appeal process.

The United States Supreme Court has held that denial of a state pretrial application for review did not serve to exhaust available state remedies:

> In <u>Ex parte Hawk</u>, 321 U.S. 114, 116, 64 S. Ct. 448, 449, 88 L. Ed. 572 (1944), we held that denial of an application for an extraordinary writ by state appellate courts did not serve to exhaust state remedies where the denial could not be fairly taken as an adjudication of the merits of claims

18

> presented, and where normal state channels for review were available.  In the instant case, denial by state appellate courts of respondent's applications cannot be fairly taken to be an adjudication of the merits of his claim and full post-trial appellate review is available if respondent is convicted.  On these facts, the denial of respondent's applications did not serve to exhaust his available state remedies.

Pitchess v. Davis, 421 U.S. 482, 488 (1975).

In the instant case, the Louisiana Fifth Circuit and the Louisiana Supreme Court did not review the merits of Sam's pretrial challenges to the search and seizure or the reliability of the confidential informant.  Instead, Sam was to pursue remedies on direct appeal, something he did not do with respect to the claims at issue.  Consequently, he has not fairly presented the claims to the Louisiana Supreme Court and has not exhausted available state court remedies.  Pitchess, 421 U.S. at 488; see Castille v. Peoples, 489 U.S. 346, 351 (1989) (a claim is not exhausted when it is not presented in the procedural context in which it would ordinarily be considered); Bloom v. McKune, 130 Fed. Appx. 229 (5th Cir. Apr. 13, 2005) (claims presented in post-trial motion but not pursued on direct appeal did not constitute exhaustion).

Therefore, Sam has failed to exhaust available state court remedies regarding four of his federal habeas claims; specifically: Claim No. One, unlawful arrest based on unreliable confidential information; Claim No. Two, unconstitutional search and seizure; Claim No. Seven, denial of due process on review of the search and seizure claims; and Claim No. Ten, information from the confidential informant did not establish sufficient

facts and circumstances to justify the stop, search and seizure.  These unexhausted claims require dismissal of Sam's petition.  See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420).

The record discloses no good cause for Sam's failure to exhaust these claims and this court can find none in the record.  Rhines v. Weber, 544 U.S. 269, 278 (2005).  This petition therefore must be dismissed without prejudice to require Sam to exhaust available state court remedies.  Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.  For the same reasons, the court should deny Sam's motion for summary judgment.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the motion for summary judgment (Rec. Doc. No. 15) filed by Joseph Sam be **DENIED**.

It is further **RECOMMENDED** that the petition of Joseph Sam for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___18th___ day of December, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE